**C. C. YOUNG MEMORIAL HOME FOR AGED WOMEN et al. v. NELMS et al.**

No. 14084.

Court of Civil Appeals of Texas. Dallas.

July 15, 1949.

Rehearing Denied in part and granted in part Sept. 16, 1949.

Thompson, Knight, Wright, Weisberg & Simmons, Sol Goodell, Edward C. Fritz, McNees & McNees, all of Dallas, for appellants.

Milton K. Norton, F. W. Bartlett, Jr., Carrington, Gowan, Johnson & Walker, all of Dallas, for appellees.

BOND, Chief Justice.

The rights of each of the parties in this suit hinge on the provisions of the will of Dr. J. H. Neale, giving effect to the intention of the testator as expressed in the will. Counsel for all parties have assembled, reviewed, and analyzed authorities by courts of this and other states involving construction of wills in many respects similar to the one here under consideration. The generic rules of construction of wills generally are well known. Each case must depend on the ascertain-ment of the intention of the testator manifested by the language used by him in making disposition of his property.

The pertinent parts of the will of Dr. Neale provide as follows: "(1) Subject to the payment of my debts, and the other provisions hereinafter contained, I hereby give, devise and bequeath unto my beloved wife, Duke Davis Neale, all property, real and personal, of which I may die seized or possessed, of every kind and character and wherever situated, to be by her used, sold or disposed of as she may see fit, provided, however, at the time of the death of my said wife, one-half of whatever she may then own shall go to and vest in my heirs then living according to the laws of descent and distribution of the State of Texas; and the other one-half shall go to and vest in the heirs then living of my said wife according to the laws of descent and distribution of the State of Texas." It will be seen that in said provisions the testator sets forth a comprehensive plan for the disposition of his property. In the preamble he states that the main purpose and motive prompting the will is "to arrange *my* worldly affairs" ; accordingly, "I give, devise and bequeath unto my beloved wife, Duke Davis Neale, all property, real and personal, of which *I* may die seized and possessed * * * to be by her used, sold or disposed of as she may see fit." (Emphasis ours.) Such bequest is an absolute fee to his wife of all *his* property, subject only to the payment of his debts; and whatever remains at her death to vest in the beneficiaries named in the will who are living at the time of her death. The beneficiaries (heirs), other than the wife, were given no present specific interest in any of the testator's property, and no subsequent interest, except in such portion as shall remain undisposed of by his wife, effective at her death. Dr Neale died in 1939; his wife survived him. The property involved was community. They had no children. Outside the will, the survivor would have inherited the whole of the property, to the exclusion of all others, under the law of descent and distribution.

It will be seen from the will that Dr. Neale was dealing with only his prop-

erty in the gift to his wife. He gave his wife the unqualified right to use, sell, or dispose of it as she saw fit. The remaindermen (heirs) were not vested with any right as to hinder his wife in the exercise of the fee given her, nor were they given any right in the proceeds of sale of any of the property. Their right, in futuro, created no trust in their favor for which the life-tenant was required to give an accounting to them for the sale or use of the property, or the proceeds of sale of any such property. The life-tenant was not a trustee or quasi trustee for such remaindermen. Only does a trust rest on a life-tenant to preserve and protect, or account for an estate for a remainderman when the remainderman has a clear vested indefeasible interest in the property over which the life-tenant has fiduciary control. The wife of Dr. Neale, having been given the unlimited (other than life) unqualified right of disposition of all of his property—a fee for and during her lifetime—as distinguished from a life-estate where some present contingent interest or fee is vested, the proceeds of sale are not deemed to be a part of a trust for such subsequent devisees. A life-estate under a deed or will, presupposes a fee or present reversionary interest existing elsewhere than in the life-tenant. In which case the life-tenant is a trustee or quasi trustee, accountable for the property and the proceeds of sale; but where a life-tenant takes a conditional fee, or an unconditional fee, or even a life-estate with power of disposition, the life-tenant is vested with the legal title.

In the case of Harrell v. Hickman, Tex. Sup., 215 S.W.2d 876, 879, the court had under consideration the interpretation of a joint will in which the husband and wife bequeathed and devised to the survivor of the two their community property, for his or her sole use and benefit; and, in the event any of the property should remain after the death of such survivor, such remainder was to pass to and vest in various institutions and individuals named in the will. The will placed no limitation whatever on the right of the survivor during his or her lifetime. The Supreme Court, speaking through Judge Hickman, said:

"In the instant case the testators in language free of ambiguity have clothed the survivor with the unqualified right to convey the property during his or her lifetime and have limited the rights of the remaindermen to whatever estate remained in the survivor at his or her death, and we are not authorized to impose a limitation upon that right or by implication to grant any right to the remaindermen *other than to acquire that which might remain after the death of the survivor.*" (Emphasis ours.)

Giving further consideration to the will limiting the duration of the vested fee in the wife for and during her lifetime, and then, and only until then, providing that "one-half of whatever she may *then* own shall go to and vest in my heirs then living * * * and the other one-half shall go and vest in the heirs then living of my said wife * * *," the testator, in the instant case, did not undertake to dispose of all the community property belonging to him and his wife, or attempt to make disposition of all property, whether community or otherwise, owned by the wife at the time of her death. Evidently he was dealing with *his* property, and made disposition of only *his* interest in the community remaining unsold at the time of the death of his wife. The only property he could have had in view, in making the gift or devise to his and her heirs, was his community; he did not know, and certainly could not know, what property his wife "may then own" at the time of her death. In fact, she inherited other property after the death of her husband, and had it on hand at the time of her death.

It is a well settled rule that a testator's will cannot be given the effect of attempting to dispose of property of another unless it is open to no other construction. In the will giving to his wife all property, real and personal, Dr. Neale said, "of which *I* may die seized and possessed * * *." What property was he then "seized and possessed" of?—Only his one-half community. The preamble, or introductory clause of the will, reads: "I * * * desiring to arrange *my* worldly affairs * * * do make * * * my last will." What "worldly affairs" was he talking

about, or did he have in his mind, in making the will? Clearly he meant the property of which "I may die seized and possessed." What property was he devising to his and her heirs, effective at the death of his wife? "Whatever she may then own";—manifestly, the property which he devised to her and of which he was "seized and possessed" and which he had a right to will; that is, the one-half of the community that remained at her death. The language of the will is susceptible of the construction that he was dealing only with the property which he had given to his wife, and that "whatever" of that property she may own at the time of her death should go to his and her heirs.

In the case of Feegles et al. v. Slaughter et al., Tex.Civ.App., 182 S.W. 10, 11, the court had for interpretation a will similar to the one here, where the testator bequeathed all his community property to his wife, and provided "that upon the death of my wife the property *which she then owns* shall be equally divided between her relatives and my relatives, it being intended that she shall have full power to control and dispose of the property during her life." This Court, opinion by Chief Justice Rainey (writ refused), held that the devise to the wife was an absolute fee to the property, giving her "full power to control and dispose of the property" during her life; that the power to control and dispose of the property during her life was not intended to limit the title in the wife to a life-estate, but to designate when the relatives should take, in the event she had not disposed of it, and there was any remaining in her hands at the time of her death which should go to the heirs. In the case of McMurry v. Stanley, 69 Tex. 227, 6 S.W. 412, approved in the case of Feegles v. Slaughter, supra, the Supreme Court held: "There is nothing in the relationship of the parties or the purposes for which the power to use and dispose of the property was most positively given to the husband which would authorize a holding that the testatrix intended that her nieces should have the right to follow and have the proceeds of any part of her estate that might be disposed of by her husband." In

the case of Randall v. Estes, Tex.Civ.App., 218 S.W.2d 338, 340, this Court held, in a will analogous to the one here, that the remaindermen, after the death of the first taker under the will had "only such contingent portion as shall remain undisposed of by the husband, to take effect at his death. All of their rights, therefore, are contingent, vesting at the death of the life-tenant, only in the undisposed of properties."

In the case at bar, Mrs. Neale, having been accorded an absolute fee in the devised community property owned and possessed by Dr. Neale, sold (in 1944 and 1945) a part of the community property for the sum of $14,800. In 1947 Mrs. Neale died, leaving no husband, child, father, or mother surviving; and, at the time of her death, she still owned (of the community property) the family homestead known as 610 West 9th Street, Dallas, Texas; household and kitchen furniture, and $500 in cash. She also owned,—and whether the proceeds of such sale, or her separate estate, it matters not—(1) Savings account in the Oak Cliff Bank and Trust Company, Dallas, Texas, $5,100.37; (2) Savings account in American National Bank of Oak Cliff, Dallas, Texas, $10,103.76; (3) checking account in American National Bank of Oak Cliff, Dallas, Texas, $304.32; (4) two Series "E" United States Savings Bonds, acquired by her in March 1942, of the maturity value of $2,000, valued at $1,660; all subject to her debts aggregating $1,050 and costs, expenses, executor's and attorney's fees in connection with the administration of her estate. She left a will, duly probated, in which she named Ota Sue Kirkpatrick (now deceased) and J. L. McNees as Independent Executors of her estate, giving special bequests of $500 to her brother, Sam Lobbin, who died in 1946; $1,000 to Albert Sidney Neale, her husband's brother; $1,000 to Richard Neale, her husband's brother; $100 to Mrs. Annie Marie Brown, daughter of a deceased brother of her husband; and $500 to her friend Ota Sue Kirkpatrick. She left the balance of her property, one-half to the Methodist Hospital of Dallas (to be placed in said hospital's endowment fund

as a memorial to her deceased husband); one-fourth to C. C. Young Memorial Home for Aged Women (to be placed in the endowment fund of said home as a memorial to her deceased husband); and one-fourth to Tyler Street Methodist Church, corner of West Tenth and Polk Streets, Oak Cliff (to be placed in the building fund and used by the Board of Stewards of said church as they may deem proper and advisable as a part of the building fund,—either for the retirement of indebtedness against said church building or for the purposes of erecting new buildings). In the administration of her estate, the homestead and household and kitchen furniture were sold for the net sum of $8,174.26. The will of Mrs. Neale is not contested; only the property held and possessed by her as being a part of the estate of her husband.

On trial of this suit in the court below, without a jury, the court interpreted the will of Dr. J. H. Neale, by its terms, as giving to his wife, Duke Davis Neale, a life-estate only, coupled with an absolute or unlimited power of disposition; that he intended, and gave, the remainder of his estate, including the proceeds from sale thereof, on hand and in possession of his wife at the time of her death, in equal portions to his legal heirs and the legal heirs of his wife then living. Accordingly, the trial court, in partitioning the estate of Dr. Neale, awarded one-half of all the property held and in possession of Mrs. Neale at the time of her death (save and except the sum of $2,015 which she is shown to have inherited from her sister) to the heirs of Dr. Neale named in the judgment; the other one-half to the heirs of Mrs. Neale; and in all other respects accorded the devisees named in the will of Mrs. Neale their respective bequests payable out of the estate of Mrs. Neale; then taxed the costs and expenses and attorney's fees in a comprehensive manner in keeping with the holding of the court in its interpretation of the will of Dr. J. H. Neale. All parties to the judgment have excepted to the ruling of the court and are complaining parties in this appeal.

In consonance with our holding, the judgment of the trial court should be reversed and cause remanded for further considera-tion by the court below in awarding and partitioning the estate held and in possession of Mrs. Neale, not inconsistent with our conclusions: That appellees, heirs of Dr. J. H. Neale, are entitled to one-fourth of the proceeds of sale (by the executor of Mrs. Neale's estate) of the community homestead, household and kitchen furniture, and $500 (held and possessed by Mrs. Neale at the time of her death out of the estate of Dr. Neale), and as provided in the will of Dr. Neale; and to the appellees, heirs of Mrs. Duke Davis Neale, one-fourth of said estate. Each moiety subject to the debts and administration expenses due by the estate of Dr. J. H. Neale in equal proportion; and that all other of the estate held and possessed by Mrs. Duke Davis Neale vest in and be paid to the legatees named in her will as provided therein, after the payment of all debts, costs and administration expenses incident to the probation of her will and the administration of her estate and the distribution thereof among the named devisees, including a reasonable executor's fee. That the attorneys representing the various parties to this litigation by contract be awarded their contractual fees, and the guardian ad litem for the minors a reasonable fee payable out of the portion of the estate of their respective clients.

Judgment of the court below is reversed and remanded with instruction. All costs of suit taxed against appellees.

CRAMER, J., not sitting.

On Rehearing

BOND, Chief Justice.

As related in our original opinion, the will of Mrs. Neale names J. L. McNees as one of the independent executors of her will. Her estate consisted of items of cash in banks in the aggregate sum of $15,508.45 and U. S. Saving Bonds of the maturity value of $2,000, valued at $1,660, all subject to her debts aggregating $1,050, and costs and expenses of executors and attorney's fees in connection with the administration of her estate of an undetermined amount. Also, at the death of Mrs. Neale she left undisposed-of community property of herself and husband which she had been administering as independent exe-

cutrix under the will of her husband, Dr. J. H. Neale, consisting of their homestead and various items of household and kitchen furniture.

In due course the trial court appointed Mr. McNees receiver to sell the community property for the purpose of partitioning it among the joint owners. The homestead and household effects were sold, agreeable to the court and all parties interested, for the sum of $8,174.26. Dr. Neale's estate at the time of his death, among other things not necessary to here mention, consisted of $500 in cash. During the course of administration of his estate, Mrs. Neale, as independent executrix and primary beneficiary under Dr. Neale's will, paid all outstanding indebtedness, costs, and expenses far in excess of the $500, and presumably used such portion of the estate for the maintenance and support of herself as she saw fit. There is no positive evidence that Mrs. Neale expended the $500 in course of administration, or for her own use and benefit; in consequence, we held in our original opinion that the $500 was on hand at the time of the death of Mrs. Neale as an asset of her husband's estate and accountable in the partition among the legatees and devisees of Dr. Neale, along with the $8,174.26, making the total for such distribution the sum of $8,674.26—one-fourth to the heirs of Dr. Neale and one-fourth to the heirs of Mrs. Neale; and that the remainder of Mrs Neale's estate passed to the named beneficiaries in her will after the payment of all debts, costs, and administration expenses incident to the probation of her will and the administration of her estate, including a reasonable fee for the executor, Mr. McNees. We did not allow any deduction for receivership fees, or fees for the receiver's attorney, payable out of Mrs. Neale's estate,—her estate was then being administered by the executor.

 In motion for rehearing appellants—beneficiaries under the will of Mrs. Neale—assign error to our holding that the $500 of the estate of Dr. J. H. Neale should be accounted for in the distribution among the heirs of Dr. and Mrs. Neale, for the reasons that under the will of Dr.

Neale his wife was given the unqualified right to use, sell, or dispose of all his property as she saw fit, and that the uncontroverted evidence is to the effect that Mrs. Neale expended much in excess of the $500, and that it therefore must be presumed that she applied the cash on hand in due channels of administration, rather than using her own funds. We sustain the assignment, under the authority that "Where testator gave property to widow for life with authority to consume corpus if income was insufficient for her support, the will authorized widow, if necessary, to consume both income and corpus of estate without first resorting to her own." Maxwell v. Harrell, Tex.Civ.App., 183 S.W.2d 577, Syl. 10. And " * * * where a person has two funds to draw upon for living expenses, one his own individual estate, and the other from the estate of another in which he has a life interest with power to consume, in the absence of evidence to the contrary, there is a presumption that he would expend the latter before drawing upon the former." In re Richey's Estate, 251 Pa. 324, 96 A. 748, 749. The $500 left by Dr. Neale was not traced into any funds in bank accounts or in possession of Mrs. Neale at the time of her death, hence the legal presumption is that she used it as she was privileged to do under the will of Dr. Neale; and it not being a subject for partition among the heirs of Dr. and Mrs. Neale, the $8,174.26 of the estate of Dr. Neale should be distributed by the receiver,—one-half to the devisees of Dr. Neale and one-half to the devisees of Mrs. Neale as per the will of Dr. Neale, after payment of all costs and expenses of the court below, including reasonable fees for the receiver and the guardian ad litem for the minor defendants,—apportioned as their interests appear in said fund. All costs in this appeal are taxed proportionally against appellees.

Our original opinion and judgment heretofore entered, where it is inconsistent with the conclusions here reached, is set aside; appellant-beneficiaries' motion for rehearing as above indicated is sustained; otherwise overruled. Appellees' motions for rehearing are overruled.