C. W. HOBSON II, Appellant,

v.

Clara Elsie SHELTON et al., Appellees.

No. 3458.

Court of Civil Appeals of Texas.

Waco.

April 25, 1957.

Rehearing Denied May 16, 1957.

Burford, Ryburn, Hincks & Ford, Logan Ford, Cooper Blankenship, Dallas, for appellant.

Leake, Henry, Golden & Burrow, Hawkins Golden, Duncan Boeckman, Dallas, for appellees.

McDONALD, Chief Justice.

This is a suit for the construction of the wills of C. W. Hobson and wife, Emma J. Hobson, both deceased. The appellant and plaintiff in the Trial Court is C. W. Hobson II, nephew and adopted son of the decedents and a devisee under both wills. The appellees and defendants are Clara Elsie Shelton, Sarah Putnam Leake,

and Mary Frances Wood, daughters of the decedents and devisees under both wills.

Plaintiff brought suit to have the court construe the wills as giving him a life estate, *with power of disposition,* in ¼ of the corpus of both estates. The defendants prayed for a construction of the wills giving plaintiff only a life estate, and further prayed for moneys advanced to plaintiff from the ¼ corpus of the estates, as well as depletions on oil payments received by plaintiff from the estates since 31 March 1946. The corpus of the estates consists of stocks and oil interests.

The Trial Court, without a jury, rendered judgment that plaintiff had only a life estate in ¼ of both estates, *with no power of disposition,* and gave judgment to defendants for certain moneys advanced from the corpus of ¼ of the estates to plaintiff plus certain depletions on oil payments received by plaintiff from the estates.

Plaintiff appeals, contending: 1) The Trial Court erred in holding that plaintiff had only a life estate in ¼ of the corpus of the estates of C. W. Hobson and wife, Emma J. Hobson, both deceased, with no power of disposition in said ¼. 2) The Trial Court erred in rendering the money judgment against plaintiff, because plaintiff has a power of disposition in the corpus of the estates given him.

*Pertinent portions of C. W. Hobson's will (partially summarized) are as follows:*

In paragraph 1, C. W. Hobson directed that his debts be paid.

In paragraph 2 he gives his watch to his nephew and adoptive son, C. W. Hobson II.

In paragraph 3 he gives his entire revenue from his estate to his wife, Emma J. Hobson, so long as she lived.

In paragraph 4 he gives ¾ of his estate in fee to his three daughters, Mmes. Shelton Leake, and Wood, subject to the life estate in his wife.

Paragraph 5 reads as follows:

"In the other one-fourth (¼) of my estate, I will, devise, and bequeath, subject to paragraph 3 herein, *a life estate unto my said nephew and adopted son, C. W. Hobson II. The remainder of said one-fourth estate undisposed of by said C. W. Hobson II, at the time of his death, I will, devise* and bequeath unto his surviving wife and heirs of his body, share and share alike, but if at his death he has neither surviving wife nor child nor children nor grandchildren, *then it is my will and desire that such remaining estate shall be* vested in my said three daughters and their bodily heirs, share and share alike; *it being my intention to give my said nephew and adoptive son, C. W. Hobson II, a one-fourth (¼) interest or share in said remainder of my estate during his natural life so long as he may live to enjoy it,* as well as his surviving wife or any child or children or grandchildren which he may have at his death, but in the event neither of said contingencies should occur, then it is my intention and desire that said portion of my remaining estate shall be used and enjoyed by and vested in my own three children as above."

In paragraph 6 he provides that his estate shall remain intact until 1940 should his wife survive him but die before 1940; and then provides:

"If, however, one or more of my said children, including C. W. Hobson II, should, after the death of my wife, feel the need of more of my said estate than his or her share of the income thereof, then it is my will and desire that they shall have the right to withdraw from said estate prior to *May 1st, 1940,* such part of the principal as they deem necessary and that same be charged against their interest as an advancement against same."

In paragraph 7 he appoints his wife and four children joint independent executors of the will.

In paragraphs 8 and 9 alternate arrangements are provided for executors (not applicable here).

Mr. Hobson left a codicil to his will which reads as follows:

"This codicil, written wholly in my own handwriting, is made for the purpose of explaining the last two clauses in paragraph 6 of this will. That is to say, that in no event shall any portion of my said estate be turned over to my adopted son and nephew, C. W. Hobson II, until May 1st, 1940, except so much of same as may in the judgment of the other Trustees herein be necessary and proper."

*Pertinent portions of Mrs. Hobson's will (partially summarized) are as follows:*

In paragraph 1 she directs that her debts be paid.

In paragraph 2 she gives her daughters her personal effects.

In paragraph 3 she leaves her three daughters ¾ of her estate in fee.

Paragraph 4 reads as follows:

In the other ¼ of my estate I will, devise, and bequeath unto my nephew and adopted son, C. W. Hobson II, who has been reared by me from infancy. The remainder of said ¼ estate undisposed of by the said C. W. Hobson II at the time of his death, I will, devise, and bequeath unto his surviving wife and the heirs of his body, share and share alike, but if at his death he has neither surviving wife nor child nor children, nor grandchildren, then it is my desire that the remaining estate shall be vested in my three said daughters and their bodily heirs, share and share alike, *it being my intention to give my said nephew, C. W. Hobson II, a ¼ share in said remainder of my*

*estate during his natural life so long as he may live to enjoy it,* as well as his surviving wife or any child or children or grandchildren which he may have at his death, but in the event neither of said contingencies should occur at the time of his death, then it is my intention that this portion of my remaining estate shall be used and enjoyed by, and vested in my own three children, as above."

In paragraph 5 she provides that her estate shall remain intact until 1940 (in event of her prior death) and then provides:

"If, however, any one of my said children including C. W. Hobson II should feel the need of more of my said estate than his or her share of the net income thereof, then it is my will and desire that they shall have the right to withdraw from said estate prior to May 1st, 1940, such part of the principal as they deem necessary, and that same shall be charged against their interest as an advancement against same."

In paragraph 6 the three daughters and C. W. Hobson II are appointed joint independent executors of the will.

In paragraphs 7 and 8 alternate arrangements for executors (not applicable here) are provided for.

Mrs. Hobson left a codicil to her will leaving to her three daughters $5,000 each of her personal account, "and the rest of the will to be as it is."

Mr. Hobson died in 1935 and Mrs. Hobson died in 1945. In 1946 the plaintiff and defendants partitioned the corpus of both estates among themselves. Defendants each received ¼ of the corpus of both estates in fee, and the remaining ¼ was transferred into the names of plaintiff and defendants as trustees for plaintiff. From that time plaintiff has received the income from this ¼ of the estate, such income being in the nature of dividend payments on stock and oil royalty income. Plaintiff has been advanced some $2,170 additional

from the corpus of the estates and signed notes for same and agreed to repay same. Plaintiff likewise agreed to repay to the corpus of the estates $3,150 representing depletion of corpus from the oil royalty payments.

It is plaintiff's contention that the wills of C. W. Hobson and Mrs. Hobson devise to him a life estate in ¼ of the corpus of both estates *with power of disposition of his ¼;* that a contingent remainder in the amount undisposed of by plaintiff during his life goes to 1) his wife, if she survives him; 2) if not survived by his wife, then to his children; 3) if no wife or children, then to his grandchildren, and finally; 4) if no survivor, then to his three sisters.

The sole question for determination by this court is whether plaintiff received a life estate in the ¼ of his parents' estate *with power of disposition of the corpus during his lifetime*—or whether he received a life estate *without power to dispose of the corpus.*

■ The primary rule in the construction of wills is to ascertain and follow the intention of the testator. All other rules of construction are of secondary importance, and are but auxiliaries in the practical application of this cardinal rule. Orr v. O'Brien, 55 Tex. 149; 44 Tex.Jur. 680; Pinkston v. Pinkston, Tex.Civ.App., 254 S.W.2d 196, W/E Ref. NRE.

■ A will should be construed to give effect to every part of it if the language is reasonably susceptible of that construction. Republic Nat. Bank of Dallas v. Fredericks, Tex., 283 S.W.2d 39.

■ Plaintiff's contention is that since the wills state in paragraphs 5 and 4 respectively * * * *"The remainder of said ¼ estate undisposed of by said C. W. Hobson II, at the time of his death, I will, devise, etc. * * *",* that an implied power of disposition of the corpus of the estate is created. Both the will of Mr. Hobson and of Mrs. Hobson thereafter state in the same paragraph, however:

" * * * *it being my intention to give my said nephew and adopted son, C. W. Hobson II, a ¼ interest or share in said remainder of my estate during his natural life, so long as he may live to enjoy it * * *."

We think the foregoing language expressed in both wills, controls all prior language in the respective paragraphs of both wills, and definitely shows the intention of the testators to give plaintiff a *life estate in ¼ of their property*. The will of Mr. Hobson moreover states that a life estate in the ¼ is devised to plaintiff.

Plaintiff further contends that the language of paragraphs 6 and 5 of the wills giving all children a right to withdraw from the corpus of the estate prior to 1940 under certain conditions shows an intention on the part of the testators that plaintiff have power of disposition. With this contention we cannot agree. In the first place, the power to withdraw was predicated on contingencies which never came to pass, viz., if Mrs. Hobson survived her husband but died prior to 1940. Mrs. Hobson did not die until 1945. Further, in the case of Mr. Hobson's will, the codicil prevented plaintiff from withdrawing in any event without consent of the three sisters; and of course Mrs. Hobson's will did not take effect until her death, which was after 1940. We do not think paragraphs 5 and 4 of the respective wills indicate intention on the part of the respective testators for plaintiff to have power of disposition of the corpus of his life estate.

A life estate tenant, which plaintiff was, is entitled to all profits or income accruing during his tenancy, but cannot dispose of the corpus of the estate unless *expressly* authorized to do so. Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, W.E. Ref. An *implied* power to dispose of the corpus by the life tenant of an *express life estate* does not exist in Texas.

In Hughes v. Beall, Tex.Civ.App., 264 S.W. 171, 172 W/E refused, the testator devised to her husband:

"I give, bequeath and demise to my beloved husband I. L. Hughes all the estate [I die possessed of], * * * with full power and authority to use and to hold the same in any manner he may desire, and at his demise * * * the balance of said estate * * * I desire and direct that said estate be equally divided amongst all of our children * * *."

The court said the "words used by proper construction, operate to pass a less estate to the husband than a fee-simple one", and that "the grant of 'full power and authority to use and to hold the same in any manner he may desire' " does not signify the broad power of disposal at will of the property. The court here construed the will as giving the husband a life estate without power of disposition, with remainder at his death to the children. See also: Woodlief v. Clay, Tex.Civ.App., 71 S.W.2d 600, W.E Dis. C.C.; Young Memorial Home for Aged Women v. Nelms, Tex.Civ.App., 223 S.W.2d 302, W/E Ref. NRE.

The wills of Mr. and Mrs. Hobson give plaintiff a life estate and *definitely* give no *express* power of disposition of the corpus to plaintiff. As we read both wills, the general scheme of both, as shown by the express language used, was to give plaintiff a "life estate" in ¼ of their respective properties. Since no *express* power to dispose of the corpus was given plaintiff, he is bound by the general rules that a life tenant cannot dispose of the corpus of the estate.

Eleis v. Bruce, Tex.Civ.App. 286 S.W. 2d 645, 646, W/E Ref. NRE, involves a similar factual situation. In that case the Bruces, husband and wife, made a joint will leaving all to each other, and at the

"death of the survivor of us that J. C. Bruce [a nephew] have and that full title be vested in him to all the property then remaining, real, personal and mixed, *to be used as he may desire so long as he lives and at his death then the remaining property, if any, shall*

pass to and be immediately vested as follows:" [to the brothers and sisters].

J. C. Bruce contended he had a life estate with power of disposition of the corpus under the foregoing will. The court held that J. C. Bruce had a life estate *without* power of disposition, and that the language authorized him only to *"use"* the property and not to expend or to convey it.

We think, viewing both wills in their entirety, that it is manifest that both the testator and the testatrix *intended* for plaintiff to receive a life estate in ¼ of their respective estates without power to dispose of the corpus of such estates. We therefore hold that plaintiff received a life estate in ¼ of the property without power of disposition of the corpus. We add in passing that the foregoing construction was placed on the wills in question for some twenty years by all parties to this suit, including plaintiff.

Both plaintiff's points as well as the contentions made thereunder are overruled and the judgment of the Trial Court is affirmed.