ESTATE OF GILBERT T. ADAMS, DECEASED, VIOLA J. ADAMS, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Adams v. Commissioner
Docket No. 30727-88
United States Tax Court
T.C. Memo 1990-607; 1990 Tax Ct. Memo LEXIS 682; 60 T.C.M. (CCH) 1324; T.C.M. (RIA) 90607; December 3, 1990, Filed *682 Decision will be entered under Rule 155. Fred L. Sullins and William J. Rohrback, Jr., for the petitioner. David B. Mora, for the respondent. RAUM, Judge. RAUM
MEMORANDUM OPINION The Commissioner determined an estate tax deficiency of $ 163,013.67 against the estate of Gilbert T. Adams. After concessions by both sides, only a single issue, involving a comparatively small amount of tax, is presented to us for decision. That issue is whether the estate (petitioner) is entitled to a $ 14,000 marital deduction in respect of the decedent's bequest to his wife of his one-half community share of the contents of their home ("household goods") for her life accompanied by a power to dispose of any part of the bequest where the exercise of the power was restricted as set forth hereinafter. The case was submitted on the basis of a stipulation of facts and accompanying exhibits. At the time of decedent's death, December 24, 1984, he was a resident of Texas, and his estate is administered under the laws of Texas. The decedent's widow, Viola J. Adams, executrix, resided in Beaumont, Texas, at the time the petition in this case was filed. The decedent and his wife had four children: Gilbert *683 T. Adams, Jr., John D'Estaing Adams, Patricia Ann Adams Burnett, and Elizabeth Vi Adams, all adults when he executed his will. The decedent, an attorney admitted to practice in the State of Texas, drafted his own will, which he executed on February 26, 1979. He had no separate property; all property owned by him was community property. In paragraph 14(b) of the will decedent devised his community interest in the family home to his wife for life, with the remainder to be part of his residuary estate. The present controversy arises out of paragraph 14(c), which relates to the disposition of the decedent's community interest in the contents of the family home, referred to hereinafter for convenience as "household goods." Paragraph 14(c) provides: (c) I hereby will, devise and bequeath all household and kitchen furniture and equipment, books, silver, china, rugs, pieces or [sic] art and sculpture, and household goods and jewelry and other personal property in our home place at 995 Thomas Road to my beloved wife for and during her natural life with right and power to sell any such personal property, but first she must offer such item or items to each of our said children and said children *684 shall have a first and superior right to purchase such item or items at a reasonable price, and if more than one child wants said item or items then such children shall draw names from a receptacle to determine who shall purchase said item or items. If any such child is ill, incapacitated or not readily able to be contacted it will not be necessary to contact such child but such children as are readily available shall be contacted and given such opportunity to buy such item or items. Gift or gifts may be made to any child if gift or gifts of equal value is given to each of the other children. Any property remaining after my beloved wife's death shall be and become a part of my residuary estate and pass as provided in paragraph "FIFTEEN". [1] *685 In Schedule F of the estate tax return, relating to "Other Miscellaneous Property", eight items were listed, item 3 of which was described as "Contents and personal effects" in the family home. That item referred to the same personal property covered by paragraph 14(c) of the will and was valued in Schedule F at $ 28,000. The total value of the eight items was reported at $ 466,884.27, and decedent's one-half community interest therein was reported as $ 233,442.14. Accordingly, decedent's *686 one-half community interest in item 3 was in effect reported at one-half of $ 28,000, or $ 14,000. That $ 14,000 figure is not in dispute, and no marital deduction was claimed in respect thereof in the return. The treatment of this item was left undisturbed in the Commissioner's determination of deficiency. Moreover, petitioner did not raise any issue in its petition in respect of this $ 14,000 item, and has never sought to amend the petition to raise the issue, but has nevertheless contended in its brief that the $ 14,000 is an allowable marital deduction pursuant to section 2056 of the Internal Revenue Code. [2] The Commissioner, while calling attention to this procedural defect, has not objected, and has undertaken to respond to petitioner's arguments on the merits. In the circumstances, we will consider the opposing contentions of the parties as to the qualification of this item as a marital deduction under section 2056, relevant portions of which are set forth in the margin. [3] *687 *688 *689 There is no dispute between the parties that the marital deduction would be allowable under section 2056(a) but for the limitation in section 2056(b). And the parties appear to agree that the decedent's interest in the household goods passing to his wife is a life estate and therefore a terminable interest, with the result that the deduction is precluded by section 2056(b)(1) unless the life estate is coupled with a power of appointment that comes within the provisions of section 2056(b)(5). Here, paragraph 14(c) of the will does give the widow the power, (1) to sell any item of the bequeathed household goods provided that she first offer to sell such items to the children at a reasonable price, and (2) to make gifts to the children of equal value to each. The parties appear further to agree that such power may be treated as a "power of appointment." Accordingly, there remains for consideration whether the life estate and the power given to the widow further meet the requirements specified in section 2056(b)(5). Those requirements have been restated in convenient form in section 20.2056(b)-5(a), *690 Estate Tax Regs. They are five in number, and, to the extent relevant here, are as follows: (1) The surviving spouse must be entitled for life to all of the income * * * (2) The income payable to the surviving spouse must be payable annually or at more frequent intervals. (3) The surviving spouse must have the power to appoint the [property] * * * to either herself or her estate. (4) The power in the surviving spouse must be exercisable by her alone and * * * must be exercisable in all events. (5) The [property] * * * must not be subject to a power in any other person to appoint * * * to any person other than the surviving spouse. [Emphasis supplied.]
The parties do not dispute that the widow's interest in the decedent's one-half interest in the household goods meets the first, second, and fifth requirements. As to the third requirement, petitioner also concedes that the widow cannot appoint the property to her estate. However, the parties disagree as to whether paragraph 14(c) gives her the power to appoint the interest in the property to herself as set forth in the third requirement, and, if so, whether this power satisfies the condition of the fourth requirement that it be exercisable *691 by her "alone and * * * in all events. " We hold that the widow was not given a power that comes within the scope of section 2056(b)(5). The standard for evaluating compliance with the statutory requirements of section 2056(b)(5), as restated in section 20.2056(b)-5(a), Estate Tax Regs., is set forth in section 20.2056(b)-5(g)(2) as follows: (2) The power of the surviving spouse must be a power to appoint the entire interest or a specific portion of it as unqualified owner * * * that is, in effect, to dispose of it to whomsoever she pleases. * * *
Applying this standard, the language of paragraph 14(c) of the will is so clear that unless Texas law, discussed hereinafter, requires us to give it an effect at variance with its plain meaning, the widow was not given a power that comes within the scope of section 2056(b)(5). Plainly, the widow was not given the power to appoint "as unqualified owner" or "to dispose of [any item of the bequest] to whomsoever she pleases." Her power was restricted. She certainly was not given any right to donate any item to anyone other than to a child, and even then only if a gift of equal value were given to each of the other three, thus in substance *692 merely accelerating in part the remainder established by the decedent to take effect after his wife's life estate. Similarly, if she wished to sell an item to a stranger, the proposed sale could be defeated by a child upon paying a reasonable price for the item. Even her power of sale was thus subject to at least the partial control of any one of her four children. When examined in the light of the standard set forth in section 20.2056(b)-5(g)(2), Estate Tax Regs., the surviving spouse did not have the power to appoint the property to herself within the third requirement of section 20.2056(b)-5(a), Estate Tax Regs., nor could she exercise it alone and in all events within the fourth requirement of that regulation. To meet the requirements of section 2056(b)(5), the will "must vest the surviving spouse with an absolute, unrestricted right of disposition. * * * [W]hether exercisable 'during life' or by testamentary gift, the power must include the right to transfer the property absolutely with or without consideration, that is, both the right to sell and to donate, in complete derogation of the rights of the remaindermen." Burnett v. United States, 314 F.Supp. 492, 494 (D. S.C. 1970), *693 affd. per curiam 436 F.2d 975 (4th Cir. 1971). Moreover, in the absence of the power to "give the property away while living to anyone," even the right of the surviving spouse to "consume at her discretion and dispose of the property for her own use * * * falls short of the power to appoint as unqualified owner, required by the exception [i.e., section 2056(b)(5)]." Estate of Opal v. Commissioner, 54 T.C. 154, 166 (1970), affd. 450 F.2d 1085 (2d Cir. 1971). Certainly, the power given to the surviving spouse by paragraph 14(c) of the will likewise falls short of satisfying the demands of section 2056(b)(5) of the Code and section 20.2056(b)-5(a) and 5(g)(2), Estate Tax Regs. To be sure, since this is a Texas will, paragraph 14(c) must be read as it would be construed under Texas law. [4] And our discussion above as to what paragraph 14(c) provides is based on the assumption that it would be so understood by the Texas courts since the language is so clear as to leave no reasonable basis for arriving at any other meaning. Moreover, upon examination of the decisions of theTexas courts, we are satisfied that Texas law is fully in accord with the conclusion we have drawn from the language *694 of paragraph 14(c) in respect of the power of the surviving spouse. In the first place, petitioner does not argue, and indeed could not successfully argue, that under Texas law the widow was empowered to make gifts of any specific item of property except as expressly allowed by paragraph 14(c) of the will. See Nye v. Bradford, 144 Tex. 618, 193 S.W. 2d 165, 167 (1946) (the power to sell property *695 subject to a life estate does not include the right to make a gift of the property); Bridges v. First National Bank in Dallas, 430 S.W. 2d 376, 381 (Tex. Civ. App. 1968). Cf. Hobson v. Shelton, 302 S.W. 2d 268, 272 (Tex. Civ. App. 1957), writ refused, no reversible error (no implied power under Texas law to dispose of the corpus of an express life estate). This circumstance alone establishes that the widow was not given the "absolute, unrestricted right of disposition" ( Burnett v. United States, supra) that is essential to bring into play the exception of section 2056(b)(5). Secondly, no Texas case has been called to our attention that would permit the widow to bypass the restrictions attached to her right to sell any portion of the personal property. Thus, she would be prevented, for example, from selling any item to a favored friend or collateral relative at a low price if one of her children were to offer to purchase it at a "reasonable price." Or even if she were sufficiently fortunate to find a stranger willing to purchase it at a high price, a child could again stop the sale by buying it at a "reasonable price." Certainly, the will as written did not give her an unfettered *696 right to sell the property. The present case is radically different from other Texas cases relied upon by petitioner involving life estates coupled with an unrestricted power to sell. See, e.g., Commercial Bank, Uninc., of Mason v. Satterwhite, 413 S.W. 2d 905, 907 (Tex. 1967) (provision reading "I furthermore give my wife full authority to sell, transfer and assign any portion of my estate"). Cf. Harrell v. Hickman, 147 Tex. 396, 215 S.W. 2d 876, 879 (1949). We hold that the absence of an unlimited power to sell prevents this case from being treated as one in which the life tenant is empowered to appoint to herself, contrary to petitioner's position based upon its bold assertion that the widow "had the absolute and unfettered right to appoint the personal property to herself. " Petitioner has also argued that the widow, upon sale of the property, would have unrestricted use of the proceeds. Apart from the fact that she was not given the unrestricted right to sell in the first place, there would appear to be Texas law to the effect that the proceeds of any sale would be subject to the same restrictions that are applicable to the property sold. Muhlhausen v. Lee, 360 S.W. 2d 161 (Tex. Civ. App. 1962), *697 writ refused, no reversible error; Edds v. Mitchell, 143 Tex. 307, 184 S.W. 2d 823, 825 (1945). The point is at least arguably defective, even if it were otherwise relevant here. We have considered various other contentions in this case but think they are not worthy of discussion. Due to concessions by both parties, Decision will be entered under Rule 155. Footnotes
1. Paragraph 15 provides that the residuary estate is to be divided into four equal parts, one part to be given outright to each of three named children and the fourth part to be placed in trust for the fourth child, Elizabeth Vi Adams. The record does not explain why a testamentary trust was to be established only for Elizabeth Vi. However, it does suggest that there might have been some health problem or other circumstance relating to her that called for treating her differently than her three siblings. Thus, paragraph 14(c) contains the rather unusual provision about dispensing with the requirement of contacting any child in respect of that child's right to purchase an item covered by paragraph 14(c) if such child "is ill, incapacitated or not readily available to be contacted." Also, the testamentary trust sets forth specific provisions requiring the trustees to make provisions for Elizabeth Vi's "health, medical care, support and welfare" from net income of the trust, and directed them to invade corpus if necessary. And we note further that the decedent appointed as executors his wife and the three children other than Elizabeth Vi.
2. Except as otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect in respect of estates of decedents who died in 1984 at the time of Gilbert T. Adams' death.↩
3. Sec. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, * * * (b) Limitation in the Case of Life Estate or Other Terminable Interest. -- (1) General rule. -- Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest -- (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * * (5) Life estate with power of appointment in surviving spouse. -- In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse -- (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.
4. It has long been established that state law fixes the rights created in the property, while Federal tax law is conclusive as to the results that flow from such rights regardless of the label that state law might place upon them. Morgan v. Commissoner, 309 U.S. 78, 80-81 (1940); Helvering v. Stuart, 317 U.S. 154, 162 (1942); Estate of McMillan v. Commissioner, 76 T.C. 170, 173 (1981), affd. 670 F.2d 788 (8th Cir. 1982). However, only an opinion of the highest court of the State is determinative for the purpose of fixing rights in property; opinions of lower courts of the State are not binding, although, in the absence of an applicable opinion of the highest court, "proper regard" may be given to lower court opinions for this purpose. Commissioner v. Estate of Bosch, 387 U.S. 456↩ (1967).